J-S56009-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| PATRICK EUGENE WRIGHT, | |
| Appellant | No. 338 MDA 2015 |

Appeal from the Judgment of Sentence January 27, 2015
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0000709-2014

BEFORE: SHOGAN, JENKINS, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.: **FILED NOVEMBER 06, 2015**

Appellant, Patrick Eugene Wright, appeals from the judgment of sentence entered following his convictions of driving under the influence of alcohol or controlled substance ("DUI"), and driving under suspension (DUI related). We affirm.

The trial court has summarized the facts of this case as follows:

> At approximately 10:45 P.M. on July 25, 2013, Lieutenant Steven Helm[1] (Helm) of the Williamsport Bureau of Police was operating an unmarked police car on Fourth Street in Williamsport, Pennsylvania. Helm approached the intersection of Fourth Street and Campbell Street. As he approached the intersection, Helm noticed that the traffic light was red. He saw the vehicle ahead of him brake at the traffic light. Helm described the brake as sudden, as if the driver of the vehicle did not realize that the light was red. The vehicle stopped in the left

_____

[*] Retired Senior Judge assigned to the Superior Court.

lane of Fourth Street, and Helm stopped in the right lane. Helm noticed that half of the vehicle was over the white stop line. Helm testified that the vehicle was not in the crosswalk.

[1] Helm has been a police officer for over 20 years.

When the light turned green, the vehicle began to turn left onto Campbell Street. According to Helm, the vehicle accelerated rapidly. He heard a slight "chirp" from the vehicle's tires as it turned onto Campbell Street. Helm described the turn as wide. He testified that the vehicle nearly struck cars parked on Campbell Street. Helm testified that the cars were parked legally on Campbell Street.

After the vehicle turned, Helm began to follow it. The vehicle was not speeding, and it did not swerve. The driver used a turn signal and turned left onto Park Avenue. Helm described the turn as sudden. He testified that the vehicle did not slow down much before the turn. After the turn onto Park Avenue, Helm stopped the vehicle. Helm identified the driver of the vehicle as [Appellant]. Helm eventually arrested [Appellant] on suspicion of driving after imbibing enough alcohol so that he could not safely operate a vehicle.[2]

[2] 75 Pa.C.S. § 3802(a).

Trial Court Opinion, 10/23/14, at 1-2. In addition, we note that testimony from police officers indicated that Appellant failed two field sobriety tests. Also, after Appellant was transported to Williamsport Hospital, he refused to have his blood drawn for chemical testing. On November 27, 2013, Appellant was charged with the crimes stated above.

On July 23, 2014, Appellant filed a motion to suppress all evidence and statements obtained as a result of the vehicle stop. The trial court held a hearing on Appellant's motion on August 18, 2014. On October 23, 2014, the trial court entered an order denying Appellant's motion to suppress.

A nonjury trial was held on January 27, 2015. At the conclusion of the trial, Appellant was convicted of both crimes with which he was charged. The trial court sentenced Appellant to serve a term of incarceration of three to six months for the DUI conviction and a consecutive term of incarceration of ninety days for the summary offense of driving under suspension (DUI related). This timely appeal followed. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

1. WHETHER THE LOWER COURT ERRED IN FINDING THAT THERE WAS SUFFICIENT EVIDENCE PRODUCED AT TRIAL TO SUSTAIN A CONVICTION FOR DRIVING UNDER THE INFLUENCE, AS THE COMMONWEALTH FAILED TO PRESENT EVIDENCE THAT THE APPELLANT WAS INCAPABLE OF SAFELY DRIVING AS A RESULT OF ALCOHOL.

2. WHETHER THE TRIAL COURT ERRED IN DENYING THE APPELLANT'S PRETRIAL SUPPRESSION MOTION, WHEREIN THE ARRESTING OFFICER DID NOT HAVE THE REQUISITE REASONABLE SUSPICION TO STOP THE VEHICLE?

Appellant's Brief at 4.

Appellant first argues that there was insufficient evidence to support his conviction of DUI. Appellant's Brief at 9-10. Basically, Appellant contends that the Commonwealth failed to establish that he was incapable of safely driving because he obeyed traffic signals, did not swerve, and used proper signaling while he was driving.

When reviewing a challenge to the sufficiency of the evidence, we evaluate the record in the light most favorable to the Commonwealth as

verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. *Commonwealth v. Duncan*, 932 A.2d 226, 231 (Pa. Super. 2007). "Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt." *Id*. (quoting *Commonwealth v. Brewer*, 876 A.2d 1029, 1032 (Pa. Super. 2005)). However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. *Id*. In addition, this Court may not substitute its judgment for that of the factfinder, and where the record contains support for the convictions, they may not be disturbed. *Id*. Lastly, we note that the finder of fact is free to believe some, all, or none of the evidence presented. *Commonwealth v. Hartle*, 894 A.2d 800, 804 (Pa. Super. 2006).

The relevant DUI statute, 75 Pa.C.S. § 3802, provides in pertinent part as follows:

> **(a)  General impairment –**
>
> (1)  An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

75 Pa.C.S. § 3802(a)(1).

This Court has instructed that to establish a defendant is not capable of safely driving a vehicle due to consumption of alcohol, "the

- 4 -

Commonwealth must prove that alcohol has substantially impaired the normal mental and physical faculties required to operate the vehicle safely; 'substantial impairment' means a diminution or enfeeblement in the ability to exercise judgment, to deliberate or to react prudently to changing circumstances and conditions." ***Commonwealth v. Kerry***, 906 A.2d 1237, 1241 (Pa. Super. 2006) (quoting ***Commonwealth v. Gruff***, 822 A.2d 773 781 (Pa. Super. 2003)). "Section 3802(a)(1), like its predecessor, 'is a general provision and provides no specific restraint upon the Commonwealth in the manner in which it may prove that an accused operated a vehicle under the influence of alcohol to a degree which rendered him incapable of safe driving.'" ***Id***. (quoting ***Commonwealth v. Loeper***, 663 A.2d 669, 673-674 (Pa. 1995)). As noted by this Court, a police officer who has perceived a defendant's appearance and acts is competent to express an opinion as to the defendant's state of intoxication and ability to safely drive a vehicle. ***Commonwealth v. Palmer***, 751 A.2d 223, 228 (Pa. Super. 2000).

The trial court made the following relevant observations regarding Appellant's challenge to the sufficiency of the evidence:

> Here, the evidence was sufficient to establish beyond a reasonable doubt that [Appellant] drove a vehicle when he was rendered incapable of safely doing so due to alcohol consumption. Helm testified that [Appellant] stopped suddenly at a traffic light and almost hit a legally parked car. Helm noticed that [Appellant] had glassy eyes; he also noticed an odor of alcohol. [Appellant] argued with Helm and would not listen to the instructions on the field sobriety tests. During the one-leg

stand, [Appellant] lifted his foot only an inch, swayed, and raised his arms. On the walk and turn, [Appellant] wanted to start the test early and thrice missed heel to toe contact. Additionally, [Appellant] did not finish the walk and turn. After observing the sobriety tests, both Helm and [Sergeant Kristopher] Moore believed that [Appellant] was incapable of safely driving as a result of alcohol consumption. [Appellant] testified that there were "too many things going on" to finish the tests. He "talked over" Helm when Helm was trying to explain the chemical testing law, and he refused the blood draw. Such evidence is sufficient to establish DUI (incapable of safely driving) beyond a reasonable doubt.

Trial Court Opinion, 4/13/15, at 5.

Likewise, our review of the record supports the conclusion made by the trial court. Lieutenant Helm offered detailed testimony regarding his personal experiences as a police officer, Appellant's erratic driving that led to the vehicle stop, Appellant's physical appearance during the stop that included glassy eyes, slow speech, and odor of alcohol, Appellant's argumentative behavior, and Appellant's inability to properly complete two field sobriety tests. N.T., 1/27/15, at 4-12. Based upon the foregoing, Lieutenant Helm opined that Appellant was impaired as a result of alcohol and was not capable of safe driving. *Id*. at 12-13. In addition, Sergeant Moore testified regarding his extensive experience as a police officer, and what transpired upon arriving at the scene as back-up for Lieutenant Helm. *Id*. at 30-34. Sergeant Moore stated that "from the second I got there [Appellant] appeared to be under the influence of alcohol and/or drugs, [was] belligerent, failing to obey commands and directions." *Id*. at 32. Sergeant Moore opined that, based upon his interactions with and

observations of Appellant, Appellant was under the influence of alcohol and was not capable of safely driving. *Id*. at 33-34. Viewing the facts in the light most favorable to the Commonwealth as the verdict winner, we conclude that the Commonwealth demonstrated, beyond a reasonable doubt, that Appellant was driving while under the influence of alcohol to a degree that rendered him incapable of safe driving. Therefore, Appellant's contrary claim lacks merit.

In his second issue, Appellant argues that the trial court erred in failing to grant his motion to suppress. Appellant's Brief at 10-12. Specifically, Appellant contends that the arresting officer lacked reasonable suspicion to stop Appellant's vehicle.

With respect to an appeal from the denial of a motion to suppress, our Supreme Court has stated the following:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the ruling of a suppression court, we must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record. . . . Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Eichinger*, 915 A.2d 1122, 1134 (Pa. 2007) (citations omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Gallagher*, 896 A.2d 583, 585 (Pa. Super.

2006). Moreover, we note that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d 1073, 1087 (Pa. 2013).[1]

Further, we are aware that Pennsylvania Rule of Criminal Procedure 581, which addresses the suppression of evidence, provides in relevant part as follows:

> (H) The Commonwealth shall have the burden . . . of establishing that the challenged evidence was not obtained in violation of the defendant's rights.

Pa.R.Crim.P. 581(H).

> The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Schneckloth v. Bustamonte*, 412 U.S. 218, 236, 36 L. Ed. 2d 854, 93 S. Ct. 2041 (1973); *Commonwealth v. Blair*, 394 Pa. Super. 207, 575 A.2d 593, 596 (Pa. Super. 1990).

*Commonwealth v. By*, 812 A.2d 1250, 1254 (Pa. Super. 2002).

_____

[1] On October 30, 2013, our Supreme Court decided *In re L.J.* In *L.J.*, our Supreme Court held that our scope of review from a suppression ruling is limited to the evidentiary record that was created at the suppression hearing. *In re L.J.*, 79 A.3d at 1087. Prior to *L.J.*, this Court routinely held that, when reviewing a suppression court's ruling, our scope of review included "the evidence presented both at the suppression hearing and at trial." *Commonwealth v. Charleston*, 16 A.3d 505, 516 (Pa. Super. 2011) (quoting *Commonwealth v. Chacko*, 459 A.2d 311 (Pa. 1983)). *L.J.* thus narrowed our scope of review of suppression court rulings to the evidence presented at the suppression hearing. In this case, Appellant's case was initiated after *L.J.* was decided. Therefore, the procedural rule announced in *L.J.* applies to the case at bar.

To secure the right of citizens to be free from intrusions by police, courts in Pennsylvania require law enforcement officers to demonstrate ascending levels of suspicion to justify their interactions with citizens as those interactions become more intrusive. ***Commonwealth v. Beasley***, 761 A.2d 621, 624 (Pa. Super. 2000).

It is undisputed that:

> [s]tate case law recognizes three categories of interaction between police officers and citizens, which include: (1) a mere encounter, or request for information, which need not be supported by any level of suspicion, but which carries no official compulsion to stop or to respond; (2) an investigative detention, which must be supported by reasonable suspicion as it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest; and (3) arrest or custodial detention, which must be supported by probable cause.

***Commonwealth v. Acosta***, 815 A.2d 1078, 1082 (Pa. Super. 2003) (*en banc*).

"[T]he standards concerning the quantum of cause necessary for an officer to stop a vehicle in this Commonwealth are settled." ***Commonwealth v. Feczko***, 10 A.3d 1285, 1290-1291 (Pa. Super. 2010). Traffic stops based on a reasonable suspicion of criminal activity or a violation of the Motor Vehicle Code under the authority of section 6308(b),[2]

_____

[2] Section 6308(b) of the Motor Vehicle Code provides, in pertinent part, as follows:

*(Footnote Continued Next Page)*

must serve a stated investigatory purpose. *Id*. at 1291. Reasonable suspicion exists when there are specific and articulable facts that create a reasonable suspicion, based on the officer's experience, that there is criminal activity afoot. *Commonwealth v. Sands*, 887 A.2d 261, 271-272 (Pa. Super. 2005). Officers may initiate a stop based upon reasonable suspicion to gather further information to support the enforcement of the Motor Vehicle Code. 75 Pa.C.S. § 6308(b); *Feczko*, 10 A.3d at 1288. DUI is a violation for which there is a need for further investigation. *Sands*, 887 A.2d at 270.

In its opinion drafted pursuant to Pa.R.A.P. 1925(a), the trial court addressed this issue as follows:

> As discussed in the Court's opinion filed on October 23, 2014, [which addressed Appellant's motion to suppress,] Helm articulated specific facts, which were sufficient to provide him with reasonable suspicion to believe that [Appellant] was committing DUI. Helm saw [Appellant's] vehicle stop suddenly at a red light even though the light was red as the vehicle approached the intersection. When the vehicle came to a stop, half of it was over the stop line. When the light turned green, the vehicle accelerated rapidly and Helm heard a slight "chirp" of the tires. The vehicle made a wide turn and almost hit legally

*(Footnote Continued)* ————————————————

Whenever a police officer . . . has reasonable suspicion that a violation of this title is occurring or has occurred, he may stop a vehicle, upon request or signal, for the purpose of checking the vehicle's registration, proof of financial responsibility, vehicle identification number or engine number or the driver's license, or to secure such other information as the officer may reasonably believe to be necessary to enforce the provisions of this title.

75 Pa.C.S. § 6308(b).

parked vehicles. Although not mentioned in the October 23, 2014 opinion, during the suppression hearing, Helm testified that a driver could make the turn without coming close to the parked vehicles. Helm observed [Appellant] make another turn without slowing down much. He testified that sudden behavior is a major indicator of impaired driving. Although [Appellant] was not speeding and used his turn signal, the totality of the circumstances shows that Helm had reasonable suspicion that [Appellant] was committing DUI.

Trial Court Opinion, 4/13/15, at 6-7.

Likewise, our review of the record reflects that the facts, in the knowledge of the officer at the time, were sufficient to establish reasonable suspicion necessary to stop Appellant's vehicle. Thus, because the police officer articulated facts at the suppression hearing that amounted to reasonable suspicion, we conclude that the stop of Appellant's vehicle was lawful. Accordingly, the trial court did not err in denying Appellant's motion to suppress evidence obtained following the stop of the vehicle and Appellant's second issue lacks merit.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/6/2015